## McBURNEY *v.* CARSON.

1. Where a suit in equity, to enforce a lien on property within the district, was pending at the time of the passage of the act of June 1, 1872 (17 Stat. 196), and a party who was not an inhabitant of, or found within, the district was thereafter, by an amended bill, made a defendant, — *Held*, that the court could acquire jurisdiction in the mode prescribed by the thirteenth section of that act.
2. The objection that the defendants to an amended bill were all necessary parties to a supplemental bill filed in the same cause, cannot be made for the first time in this court.
3. A., seised of lands situate in South Carolina, died in 1856. By his last will and testament he appointed B. his executor, with power to sell them and hold the proceeds in trust for his widow and two minor children, — the interest on one-third of said proceeds to be paid to the widow, and that on the other two-thirds to be applied to the education and support of the children until they should attain the age of twenty-one years, when the principal was to be paid to them. B. sold the lands to C. in 1857 for $50,000, receiving therefor $15,000 in cash and the latter's bonds for the deferred payments, secured by a mortgage on the lands, which was duly recorded. In 1861 the widow removed to New York, where she has since resided. In 1863, C. sold the lands to D. for $100,000 in Confederate treasury notes. In that currency, C. paid his bonds to B., who surrendered them, entered the mortgage as satisfied, and invested the currency in Confederate bonds. The children having in 1866 come of age, and assigned their interest in the estate to their mother, she, on the ground that the surrender of C.'s bonds and the cancellation of the mortgage were procured by fraud, brought her bill praying that the bonds of C. be decreed to be subsisting securities, and the mortgage a valid lien on the lands. The court below decreed accordingly. *Held*, that the decree was proper.

APPEAL from the Circuit Court of the United States for the District of South Carolina.

The facts are stated in the opinion of the court.

*Mr. Edward McCrady* for the appellants.

*Mr. James Lowndes* and *Mr. Clarence A. Seward*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This case was before us at a former time. 19 Wall. 94. The decree of the Circuit Court was reversed, and the cause remanded for further proceedings. Such proceedings have been had, and it is again before us by appeal. A brief statement of the facts and of the further history of the case is necessary.

William Carson, of South Carolina, died in August, 1856, leaving a widow, Caroline, and two minor sons, William and James. He left considerable personal property, and a plantation known as Dean Hall. By his will he appointed Robertson and Blacklock his executors, and directed all his estate to be sold on such terms as they should deem proper. The proceeds, after the payment of his debts, were to be divided into three parts, to be held in trust by his executors. The interest of one-third was to be paid to the widow. The interest of the other two-thirds was to be devoted to the education and support of the two sons until they should come of age. The principal was then to be paid over to them.

The executors sold Dean Hall to Elias N. Ball, and took his bonds and mortgage for a part of the purchase-money. In 1863, Ball sold the property to Hyatt, McBurney, & Co., a firm consisting of Hyatt, McBurney, Gillespie, Hazletine, and McGhan. The conveyance was made to Gillespie and McBurney. The firm paid for the property in Confederate treasury notes. Out of the proceeds Ball paid his bonds to Robertson, and took them up and discharged the mortgage. Blacklock, the other executor, was then absent from the country, and upon his return refused to recognize the transaction. Hyatt sold his interest in the plantation to the other members of the firm, and Gillespie and McBurney gave him a lien upon it to secure the payment of the purchase-money. When the executors sold this property to Ball, they sold to him also a considerable amount of personal property on credit, and took his bond, with W. J. Ball as surety, for the price.

As the sons of the testator came of age they transferred their entire interest in the estate of their father to their mother. She filed the bill to set aside the cancellation of the mortgage upon Dean Hall as fraudulent and void, and to charge Elias N. Ball and his surety with the amount due upon their bonds given for the personal property. The bill did not make any member of the firm of McBurney & Co. a party, except McBurney. Hyatt, it appeared, was a resident of New York, of which State the complainant was also a resident and citizen. Elias N. Ball was made a party, but was not served with process. The Circuit Court decreed in favor of

the complainant. This court held that Hyatt was not an indispensable party, as the decree would not affect his rights; but that Ball and Gillespie were such parties. The decree was therefore reversed, and the cause remanded for further proceedings.

After the cause was reinstated in the Circuit Court, the complainant filed an amended bill. In the mean time, Elias N. Ball had removed to the State of New Jersey, had there gone into bankruptcy, and Elias N. Miller had been appointed his assignee. Ball afterwards received his discharge and died. The defendants named in the bill were McBurney, McGhan, Gillespie, and Hazletine, being all the members of the firm of Hyatt, McBurney, & Co., except Hyatt, Robertson, and Blacklock, the executors, and Elias N. Miller, the assignee in bankruptcy of Ball. We hold, as we held before, that Hyatt is not an indispensable party. Hazletine could not be found. He was thereupon notified pursuant to the act. of Congress of June 1, 1872 (17 Stat. 198, sect. 13). It is objected that the act could not apply to a suit pending when it was passed. It was not applied retrospectively, but only as to parties sought to be brought into the case more than a year after its passage. Such a result is consistent with its terms. There is no reason why it should not be so applied. It is a remedial statute, and should be liberally construed to accomplish the end in view. This construction is abundantly supported by well-considered authorities. *Southwick* v. *Southwick*, 49 N. Y. 510; *Ex parte Lane*, 3 Metc. (Mass.) 213; *Holyoke* v. *Haskins*, 9 Pick. (Mass.) 259; *Rader* v. *Southeasterly Road, &c.*, 36 N. J. L. 273; *Tilton* v. *Swift & Co.*, 40 Iowa, 78; *People* v. *Mortimer*, 46 Cal. 114; Cooley, Const. Lim. 381.

But as we held before, and still hold, that Hazletine was not an indispensable party, we forbear to pursue the subject further. He is sufficiently represented by his copartners, Gillespie and McBurney, in whom is vested the legal title of the Dean Hall property. Both of them appeared and answered. Miller, the assignee in bankruptcy of Ball and Gillespie, was ordered to appear and plead, answer, or demur to the bill. Both acknowledged service of the order. This brought them effectually before the court. In McBurney's answer he in-

sisted that Miller, as assignee, and the facts of Ball's bankruptcy, discharge, and death, could be brought into the case only by a supplemental bill. The court thereupon ordered such a bill to be filed for that purpose, and it was filed accordingly. It made Miller alone a defendant. Here it has been insisted that all the other defendants to the amended bill should have been made parties to the supplemental bill also. To this objection it is a sufficient answer that it does not appear to have been taken below. It cannot, therefore, be taken here. Were we to hold otherwise, we should in this respect exercise original instead of appellate jurisdiction. There are other answers equally conclusive, but it is needless to consume time by adverting to them.

It is also objected that William Carson and James Carson, the sons of William Carson, deceased, had only a right of action, and that this right could not be transferred to the complainant. This is an inverted view of the subject. The bill charges fraud, conspiracy, and spoliation. If the charge is untrue, the bill should be dismissed. If otherwise, there is a recoil upon the wrong-doers, and those intended to be despoiled are unaffected. Their rights are just what they would have been if the scheme had been neither conceived nor executed. A different result would be a legal solecism.

All the obstructions are thus removed from our way to the examination of the merits of the case.

The last amended bill is silent as to the sale of the personal property, and the decree relates only to the bonds of Ball for the purchase-money of the plantation and the mortgage securing them upon that property. The decree charges upon the property the amount due on the bonds, and directs the mortgage to be enforced in all respects as if the bonds had not been surrendered and the mortgage had not been cancelled. McBurney and McGhan are the only appellants. Our further remarks will be confined to the subject of the decree.

The executors sold the property to Ball in the spring of 1857 for $50,000. He paid $15,000 down, and gave his bonds for the balance, secured by a mortgage upon the premises, as before stated. The property was valuable, and the amount due was well secured. The debt was payable only in lawful money

of the United States, and the executors had no right to take any thing in payment but such money or its equivalent. Such was the condition of things in the spring of the year 1863.

The civil war was then flagrant in South Carolina. McBurney says, that having a large quantity of cotton on hand, and the city being blockaded, his firm "were willing to change some of their investments into real estate until peace should be restored." This was shrewd and wise. The sole currency there was Confederate money. The Dean Hall property lay invitingly before them, but was incumbered by a heavy mortgage for the benefit of the widow and the orphans. The plan was conceived of acquiring the title and getting rid of the mortgage, both by means of Confederate currency. They thus executed it: They gave Ball $100,000 in Confederate notes for the property, and took a conveyance from him. They placed a part of the Confederate money in his hands, as McBurney says, "to enable him to pay off his bonds to said executors and to satisfy said mortgage." Robertson received payment in this paper and thereupon gave up the bonds, and as soon as he could get access to the record entered satisfaction of the mortgage. He invested the notes in Confederate bonds, which became utterly worthless at the close of the war.

McBurney & Co. and the Carsons thus changed places. The former still hold the broad acres, while the latter have lost every dollar of their investment, so well secured at the outset upon the property. They became, as it were, the insurers of the fate of battles and of the result of war. There was evidently a plot. McBurney & Co. were its contrivers, Ball was their instrument, Robertson was their dupe, and the Carsons were the victims.

If the case stopped here we could not hesitate as to what our judgment should be. But in its strictly legal aspect it is equally free from doubt.

In *Ward* v. *Smith* (7 Wall. 451), this court held that a valid payment could not be made to an agent in the Confederate States during the rebellion in any thing but lawful money of the United States, or bank-notes of the current value of their face, without the consent of the creditor.

In *Horn* v. *Lockart* (17 id. 570), an executor had sold prop-

erty, invested the proceeds in Confederate bonds, and his con-
duct had been approved and ratified by a decree of the Probate
Court. It was held by this court that the investment was
void, that the decree of the Probate Court was a nullity, and
that the executor was liable to the distributees in good money
for the full amount involved.

*Fretz* v. *Stover* (22 id. 198), in its most prominent features,
is not unlike the case before us. There, a citizen of Pennsyl-
vania, just before the breaking out of the war, took the bond
of a citizen of Virginia, secured by a deed of trust upon real
estate. The attorney of the creditor was the trustee in the
deed. During the war the attorney received payment in Con-
federate notes, and Virginia bank-notes of no greater value,
the entire capital of the bank having been converted into Con-
federate bonds. After the close of the war the creditor sued
for his debt. This court adjudged that the transaction be-
tween the attorney and the debtor was illegal, fraudulent, and
void, and decreed the enforcement of the bond and deed of
trust.

The question has been raised whether Robertson acted,
touching the bonds and mortgage of Ball, as executor or trus-
tee. The matter is immaterial in this case. An executor
guilty of a *devastavit*, whereby assets are diverted from their
proper application, and a trustee guilty of a breach of trust,
and their accomplices, if they have any, are held liable upon
the same principle and to the same extent. *Field* v. *Schrieffelin*,
7 Johns. (N. Y.) Ch. 150; *Hill* v. *Simpson*, 7 Ves. 152.

There can, however, be no doubt upon the point suggested.
"Where the will contains express directions what the execu-
tors are to do, an executor who proves the will must do all
which he is directed to do as executor, and he cannot say that
though executor he is not clothed with any of those trusts."
3 Williams, Executors, 1796.

Proving the will is an acceptance of the trust. *Mucklow* v.
*Fuller*, Jacob. 198. Where a trust is created by a will and no
trustee appointed, "the executor is bound to act as such trus-
tee." *Holbrook* v. *Harrington and Others*, 16 Gray (Mass.), 102.
In such case the sureties in the bond of the executor are liable
for his defaults, whether in one sphere of duty or the other.

*Newcomb* v. *Williams*, 9 Metc. (Mass.) 525 ; *Prior* v. *Talbott,* 10 Cush. (Mass.) 1; *Door* v. *Wainright*, 13 Pick. (Mass.) 328; *Towne* v. *Ammidown*, 20 id. 535.

*Decree affirmed.*