**BEDE STEAM SHIPPING CO., Limited, et al. v. NEW YORK TRUST CO. et al.**

District Court, S. D. New York.
Dec. 29, 1931.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston, of New York City, of counsel), for defendant Martin H. Ittner in support of motion.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (John L. Galey, of New York City, of counsel), opposed.

WOOLSEY, District Judge.

This motion is denied.

I. On November 7, 1931, Judge Coleman granted an order for extraterritorial service on the defendant Martin H. Ittner, pursuant to title 28, U. S. C., § 118, 28 USCA § 118 (Judicial Code, § 57).

This suit does not involve any question of jurisdiction of subject-matter, for it is brought by a British corporation and a subject of Great Britain against a corporation of New York and a citizen of the state of New Jersey, claiming an amount in excess of $3,000, and seeks in part to enforce a lien on certain personal property deposited by defendant Martin H. Ittner with the New York Trust Company as security for the performance of a contract of charter party under circumstances which may be summarized as follows:

On September 10, 1926, a time charter party was entered into between the plaintiff Company, acting through the plaintiff John A. Frew, doing business as Frew Elder & Company, who was its managing owner, and the American General Shipping Corporation, whereby the owner chartered the steamship Bedeburn to the American General Shipping Corporation for a minimum period of three months, with the provision that the charterer should give the owner ten days' notice of redelivery.

The charter party, of which a photostat is annexed to the complaint as Schedule A thereof, provided for a monthly hire at the rate of $1.35 United States currency per ton on it, steamer's dead weight capacity from the time of her delivery to the charterer until her redelivery to her owner.

The charter party contained, inter alia, the following clauses:

"5. Payment of said hire to be made in New York in cash or in approved Bankers sight bills on London, at Owners' option, semi-annually, in advance, and for the last half month or part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the hire, or bank guarantee, or any breach of the Charter party as herein specified, the Owners shall be at liberty to withdraw the vessel from the service of the Charterers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers in pursuance of this Charter. Delivery to count from 7 a. m. on the working day following that on which written notice has been given before 4 p. m., but if required by Charterers, loading to commence at once, such time used to count as hire."

"18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, and the Charterers to have a lien on the Ship for all moneys paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once."

In pursuance of the provision contained in the fifth clause of the charter party above set forth, and in order to furnish the security therein contemplated by deposit in lieu of a bank guaranty which, though common throughout the rest of the world, is almost never obtainable in this country, an agreement was entered into on September 28, 1926, between the president of the charterer, Martin H. Ittner, therein described as of 105 Hudson street, Jersey City, N. J., and the New York Trust Company, and Frew Elder & Company, as agent and managing owner of the steamship Bedeburn, by which it was provided that hire should be remitted through the New York Trust Company to the plaintiff as owner of the Bedeburn, or to its agent, and that "in order to secure the payment of said hire, Martin H. Ittner does hereby deposit with the New York Trust Company U. S. Treasury certificates of indebtedness and cash, to the amount and value of the sum of Ten thousand one hundred twenty-five dollars, receipt whereof the New York Trust Company hereby acknowledges."

It was further provided in this deposit agreement that if one or more installments

**660**

of hire should become due under the charter party, and should not be paid by the charterer, the New York Trust Company was authorized to pay the amount to the owner or the agent of the Bedeburn in behalf of the charterer out of the cash or proceeds of the certificates so ·deposited, and, in order to get cash, it was authorized to sell the deposited certificates in its discretion, at the best price in its judgment obtainable after notification to Martin H. Ittner and the American General Shipping Corporation, the charterer, of its intention to make such sale; whereupon they were given the right to make a deposit of cash equal to the principal amount of the certificates in order to prevent their sale.

There was also a provision for the termination of the deposit on duly authenticated information to the New York Trust Company that all installments of hire had been paid, and the amount of the deposit was also to be reduced, on similar authentication, in certain contingencies not of interest to us here.

A provision was also made by which the defendant Martin H. Ittner might substitute for any part of the cash and certificates constituting the deposit, U. S. Treasury certificates deemed by the New York Trust Company to be equivalent to the cash and certificates constituting such original deposit, and the trust company was also entitled to maintain the amount of the deposit by requiring Ittner to deposit additional cash or securities if, in the opinion of the trust company, the amount of the deposit was not sufficient to cover the outstanding obligation of the charterer to the shipowner.

It was further provided that the agreement should not be terminated or modified except in accordance with its terms or the terms of the time charter, without the written consent of the shipowner or its agent; and the trust company should not be liable under it except for gross negligence or willful malfeasance.

The whole agreement was, of course, entered into without prejudice to the time charter; and by its terms an earlier agreement was to be canceled, and the cash and securities deposited thereunder returned to the defendant Ittner.

II. Subsequently, there arose between the owner and the charterer certain disputes under the charter party of which the details are not here of interest.

These disputes resulted in the filing, on the admiralty side of this court, (1) of a libel on behalf of the Bede Steam Shipping Company, as owner of the Bedeburn, against the American General Shipping Company, charterer, and the subfreights on a cargo which the Bedeburn was then about to deliver; and, (2) of a cross-libel by the charterer against the owner.

In view of an arbitration agreement in the charter party, the Federal Arbitration Act, Title 9, U. S. C., §§ 1, 3 and 8 (9 USCA §§ 1, 3, and 8), was invoked after these libels were filed, and by a written agreement between the parties, dated December 12, 1929, Russell T. Mount, Esq., was appointed sole arbitrator to decide the disputes between the parties.

Thereafter the arbitrator heard the parties fully, and wrote a most painstaking and thorough opinion and award on the questions involved, and, subsequently, having reserved the question of damages, he also wrote a supplementary award thereon.

As the net result of the arbitration, it was found that the shipowner was entitled to recover from the charterer a certain sum of money, partly on account of expenditures, advances, and expenses for charterer's account and damages caused by the charterer to the vessel, and partly on account of hire earned by the vessel and not paid by the charterer.

III. On or about October 13, 1931, a decree signed by Judge Bondy was entered on this award, by which it was provided that the items of unpaid hire, with interest, might be satisfied out of the cash and securities pledged with the New York Trust Company under the aforesaid agreement of September 28th, or any other cash or property substituted therefor in the deposit, up to the extent of that deposit, and as to any deficiency in excess of the deposit, the recovery was to go against the charterer, with execution on the owner against its goods, chattels, and lands therefor.

As to the moneys other than charter hire found by the arbitrator to be due, the decree provided that they should be satisfied out of certain moneys seized as subfreights and then on deposit in the office of the clerk of this court.

IV. The bill of complaint in the present suit sets forth in extenso the facts above summarized, and has annexed as schedules thereof the charter party, the deposit agreement, the arbitrator's award, and the final decree entered thereon.

The gravamen of the complaint is threefold:

First, it seeks to foreclose the lien given to the plaintiff by the deposit agreement of September 28, 1926, hereinabove referred to; and second, to have a deficiency decree against the trust company for cash and/or securities which it is alleged the trust company wrongfully and improperly delivered to Martin H. Ittner without the consent of the plaintiff, and hence in derogation of its fiduciary duty to the plaintiff under the deposit agreement; third, for a deficiency decree against the defendant Ittner for any amount which the lien on the deposit might fail to liquidate.

V. Title 28, U. S. C., § 118 (28 USCA § 118), which was Judicial Code, section 57, deals with service of process on absent defendants in suits to enforce liens, and provides, so far as here material, that an order for extraterritorial service on an absent defendant may issue "in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought."

In pursuance of Judge Coleman's order, issued under this section of the United States Code, the defendant Ittner was served in New Jersey.

█ VI. That the deposit agreement above described created a lien forecloseable in equity on the securities and cash in the hands of the New York Trust Company is clear from the decisions of the Supreme Court in Ingersoll v. Coram, 211 U. S. 365, 368, 29 S. Ct. 92, 53 L. Ed. 208; Fourth Street Bank v. Yardley, 165 U. S. 634, 644, 17 S. Ct. 439, 41 L. Ed. 855; Walker v. Brown, 165 U. S. 664, 665, 17 S. Ct. 453, 41 L. Ed. 865; and Ketchum v. St. Louis, 101 U. S. 306, 316, 25 L. Ed. 999.

█ VII. The argument put forward in support of the motion is that there is infirmity in this proceeding, in so far as the defendant Ittner is concerned, because the cause of action stated in the complaint is not limited to the enforcement of the lien against the deposit in the New York Trust Company, but also seeks, as above noted, a deficiency decree against Ittner, and hence is not such a suit as is contemplated by title 28, U. S. C. § 118 (28 USCA § 118).

The fallacy of this contention, in my opinion, is that, although section 118 requires, for substituted service on defendants outside the jurisdiction, that the suit should be brought to enforce a legal or equitable lien upon real or personal property within the district where the suit is pending, it does not say that the suit shall be limited, in the relief sought, to the foreclosure of such lien.

The defendant served outside the jurisdiction is protected in this regard by the provision of section 118 that, if he does not appear in answer to the order served on him, the court issuing the order for substituted service shall be limited in its decree, so far as he is concerned, to the lien sought to be foreclosed on the property within the district of suit and shall not have power to enter any decree in personam against him.

The difficulty of holding that a prayer which goes beyond the foreclosure of a lien and asks for a deficiency decree would preclude the service of a defendant outside the district under the provisions of section 118 is easily illustrated. For example, if a mortgagee should file a bill to foreclose a mortgage on real estate which had been mortgaged to him by a nonresident of the district, he would have to include a prayer for a deficiency decree so that, in the event the mortgaged property did not realize the full amount of the mortgage indebtedness, he would be protected. If he did not do this it might, under the principle which precludes the splitting of causes of action, be considered that he had waived his right to claim such deficiency. Cf. Liberty Mutual Insurance Company v. American Incinerator Co., etc. (D. C.) 51 F.(2d) 739, 741; Sklarsky v. Great Atlantic & Pacific Co. et al. (D. C.) 47 F.(2d) 662, 665; U. S. Fidelity & Guaranty Co. v. Graham & Norton Co., 254 N. Y. 50, 54, 171 N. E. 903; Matter of Zirpola, Inc., v. Casselman, Inc., 237 N. Y. 367, 375, 143 N. E. 222. Also, the bill of complaint would necessarily have to be such as would give the plaintiff his full relief in the event that the defendant, served outside the district, elected to come in and appear generally.

Furthermore, I cannot see how a defendant, served outside the district, would be in any way prejudiced by any prayer for relief which the plaintiff may wish to make in addition to the prayer for foreclosure of a lien on property within the district, because when he is served with a notice to come in and defend he has to decide whether he wishes to allow the lien against the res sought to be foreclosed go by default, or to

come in and appear generally and defend the res on which the lien is claimed and his own personal liability as well.

■ There is, I think, no middle course, as was suggested at the argument, whereby a defendant, served, as here, outside the district, may come in and appear to defend his interest in the res without appearing generally and subjecting himself to any other relief which may be appropriate in the action.

VIII. I believe the point here raised on behalf of Ittner is of first impression. The two cases relied on by his counsel are not, as I read them, determinative of it.

In Grable v. Killits, 282 F. 185 (C. C. A. 6), it was held that Judge Killits had exercised power which he could not properly exercise under Title 28, U. S. C. § 118 (28 USCA § 118), on a service made outside his district. Judge Patterson's decision in Spellman v. Sullivian (D. C.) 43 F.(2d) 762, does not, it seems to me, touch on the question before me.

IX. There is, however, a case in the Court of Appeals for the Sixth circuit which seems to be consonant with what I have said above, although the challenge to service outside the district was not made on the same point as here. The case to which I refer is White v. Ewing, 69 F. 451 (C. C. A. 6) in which the relief sought against defendants, extraterritorially served under section 118, involved prayer for a personal judgment as well as the foreclosure of a lien on property within the district.

There certain defendants who were served by publication appeared in the suit and filed answers. Subsequently, they were allowed to withdraw their answers, but it was held by a very strong court, Judge Taft, Judge Lurton, and Judge Severens, that personal judgments could be entered against the defendants, so extraterritorially served, who had thus appeared. Chief Justice Taft, then Circuit Judge, said at page 454 of 69 F.:

"It is settled in the case of Creighton v. Kerr, 20 Wall. 8, 12, 13 [22 L. Ed. 309], that the leave to withdraw their answers without prejudice to the rights of the complainant did not take away the advantage which the complainant obtained by the voluntary appearance of the defendants, after service by publication, to file answers, and that, therefore, the defendants were in court personally at the time the decrees below were entered, and that the court had jurisdiction, if it was otherwise proper, to enter personal decrees against the defendants upon the complainant's bill.".

It is, of course, true that in White v. Ewing the general appearance waived such a point as is here raised, but it is also true that the bill of complaint contained a prayer for personal relief, and was not challenged for that reason by defendant's counsel or criticised by the court.

■ X. Finally, it must be remembered that section 118 is a remedial statute which seeks to obviate within a very narrow zone the inconvenience to litigants of our many territorial subdivisions and thus to promote the administration of justice. Consequently, it "should be liberally construed to accomplish the end in view." McBurney v. Carson, 99 U. S. 567, 569, 25 L. Ed. 378.

Settle order on two days' notice.