W. EUGENE DAVIS, Circuit Judge, dissenting.
W. EUGENE DAVIS, Circuit Judge.
I.
The majority orders a remand of this case to the Bureau of Prisons (BOP) to hold an administrative hearing even though the regulations relied on no longer require it. This is a formalistic “make work” hearing the majority strains to justify. It serves no worthwhile purpose, resolves no issue in dispute, and is expressly dispensed with by the applicable regulation currently in effect. We should affirm the district court’s judgment ordering Gutierrez to undergo forced medication to restore his competence for trial. I therefore respectfully dissent.
Gutierrez was examined and treated at the BOP prison hospital in Butner, North Carolina. As the majority recites, when these proceedings began, the relevant BOP regulations provided for an administrative hearing before a neutral BOP psychiatrist to determine whether it was appropriate to forcibly administer medication to restore a defendant’s competency for trial. However, in view of the Supreme Court’s decision in Sell, the BOP concluded that this hearing was unnecessary. Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). The Supreme Court in Sell held that the decision whether the government could forcibly medicate a prisoner to restore competency for trial was a call that must be made by a United States district judge. In light of this holding, the BOP considered that the administrative hearing was unnecessary and dispensed with the hearing called for by the regulation then in force.
While this case was on appeal, the BOP, consistent with its interpretation of Sell, amended its regulation effective August 12, 2011, to abolish the requirement for the administrative hearing which the BOP considered duplicative and unnecessary in light of Sell. See Psychiatric Evaluation and Treatment, 76 Fed.Reg. 40229, 40232-40233 (July 8, 2011). In this case, a United States district judge has made the call as required by Sell and ordered forced *909 medication. This order was issued after a full hearing that included essentially all of the procedural protections of a criminal trial including providing counsel to Gutierrez.
Now the majority insists that despite the amended regulation abolishing the requirement for the administrative hearing, the BOP nevertheless must provide that hearing because the previous version of the regulation required it. The majority, therefore, requires that this case be remanded to the BOP to provide that hearing. Two very good reasons make the duplicative hearing by the BOP unnecessary: (1) the August 12 amendment to the BOP regulations abolishing the requirement for this administrative hearing is a procedural change that applies to this and all other pending cases; (2) in the full hearing before the district court Gutierrez presented no evidence and made no argument to challenge the evidence presented by the government that he is mentally incompetent or that it is appropriate to forcibly medicate him. He argued that the BOP failed to provide him the administrative hearing required by the regulations. On appeal, that is the sole issue Gutierrez raises through his appointed counsel, the federal public defender. Gutierrez, therefore, points to no factual issue falling within the expertise of a BOP neutral psychiatrist that he would raise even if he were granted this duplicative administrative hearing.
DISCUSSION
A.
The case law does not support the majority’s conclusion that the amendment to the BOP regulations does not apply to this and other pending cases.
Consistent with the Supreme Court’s decision in Sell, the relevant BOP regulation was amended effective August 12, 2011 to provide that BOP administrative hearing procedures do “not apply to the involuntary administration of psychiatric medication for the sole purpose of restoring a person’s competency to stand trial” because “[ojnly a Federal court of competent jurisdiction may order the involuntary administration of psychiatric medication for the sole purpose of restoring a person’s competency to stand trial.” Id. at 40233.
In supplemental briefing requested.by this court, Gutierrez argues that the administrative hearing required under the old regulations should apply if this case is remanded because to hold otherwise would result in an impermissible retroactive application of the new regulation. The government argues that the new regulation should apply because it affects procedure only and does not affect Gutierrez’s substantive rights. Both parties cite to Landgraf v. USI Film Products et al, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), as the rule that governs this analysis. The majority has (in my judgment erroneously) accepted Gutierrez’s argument.
In Landgraf, a female worker filed a timely suit under Title VII of the Civil Rights Act of 1964 alleging sexual harassment. Under statutory provisions in effect at the time, a bench trial was held at which the district court concluded that sexual harassment did occur. However the district court also held that the plaintiff was not constructively discharged and dismissed the complaint because her employment had not been terminated in violation of Title VII. While her appeal was pending, the Civil Rights Act of 1991 was enacted. The 1991 Act for the first time created a right to recover compensatory and punitive damages for certain violations, including violations of Title VII, and further provided the right to trial by jury. The statute stated that unless otherwise specified, the act would take effect upon enact *910 ment. The Supreme Court affirmed this court’s rejection of the plaintiffs argument that the amended act applied and the case should be remanded for a jury trial under the 1991 Act.
The Court, in a detailed discussion, gave examples of the types of cases in which the presumption against retroactivity applies and those in which it did not. With respect to changes in procedural rules, the Court stated:
Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity. For example, in Ex parte Collett, 337 U.S. 55, 71, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), we held that 28 U.S.C. § 1404(a) governed the transfer of an action instituted prior to that statute’s enactment. We noted the diminished reliance interests in matters of procedure. 337 U.S. at 71, 69 S.Ct. 944. Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive. Cf. McBurney v. Carson, 99 U.S. 567, 569, 25 L.Ed. 378 (1879).
Id. at 275, 114 S.Ct. 1483. The Court contrasted other types of statutory changes where the presumption of non-retroactive application generally applies:
When, however, the statute contains no such express command, [of retroactive applicability] the court must determine whether the new statute would have retroactive effect, ie., whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.
Id. at 280,114 S.Ct. 1483. The Court then applied these principles to the changes in Title VII that were before it.
Two provisions of § 102 may be readily classified according to these principles. The jury trial right set out in § 102(c)(1) is plainly a procedural change of the sort that would ordinarily govern in trials conducted after its effective date. If § 102 did nothing more than introduce a right to jury trial in Title VII cases, the provision would presumably apply to cases tried after November 21, 1991, regardless of when the underlying conduct occurred.
Id. at 280-81, 114 S.Ct. 1483 (underlining added). Because the damages provision in § 102(b)(1) of the 1991 statute allowing recovery for the first time of compensatory and punitive damages were substantive changes and fell “clearly on the other side of the line,” the entirely of § 102 could only be applied prospectively. Id. at 281, 114 S.Ct. 1483. Thus the court made it clear that if the only change Congress had made in § 102 had been to grant a jury trial instead of a bench trial, this change would have applied to proceedings conducted after its enactment regardless of when the underlying conduct occurred or when the action was filed.
As applied to Gutierrez, the change in the BOP’s regulations, eliminating the requirement of an administrative hearing and confirming that the district court would decide the propriety of forced medication to return competency for trial, is clearly a change to a procedural rule. This amendment is analogous to the amendment addressed in Landgraf, which allowed a jury instead of a judge to decide fact issues in a Title VII case. The revised regulation does not alter the standard under which the accused may be *911 medicated to render him competent to stand trial. It only changes the process in which that question is considered by eliminating the BOP’s role in the process and confirming that after Sell the district court is the sole decision maker. As in Land-graf, the amended BOP rule applies to proceedings conducted after August 12, 2011, regardless of when the action was filed or the underlying conduct occurred. Thus, if we remand this case to the BOP, the amended regulation should apply.
We followed similar reasoning in Hartford Casualty Ins. Co. v. FDIC, 21 F.3d 696, 701 (5th Cir.1994). In that case a new statute changed the forum authorized to review FDIC rulings regarding deposit insurance from district courts to courts of appeal. We held that the new rule applied to a pending FDIC receivership begun prior to the enactment of the statute so the court of appeals had jurisdiction to review the FDIC ruling instead of the district court.
This Court has previously recognized that principle, holding that amendments to statutes which affect procedural or remedial rights generally apply to pending cases, where such change does not deprive a party of its “day in court.” NCNB Texas Nat’l Bank v. P & R Invs. No. 6, 962 F.2d 518, 519 (5th Cir.1992) (quoting FDIC v. 232, Inc., 920 F.2d 815, 818-19 (11th Cir.1991)). “When Congress adopts statutory changes while a suit is pending, the effect of which is not to eliminate a substantive right but rather to “change the tribunal which will hear the case,” those changes — barring specifically expressed intent to the contrary — will have immediate effect.” Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 867 F.2d 1518, 1521 (5th Cir.1989) (quoting Hallowell, 239 U.S. at 508, 36 S.Ct. at 202).... Section 1821(f)(4) changes the forum which hears deposit insurance disputes; it does not alter any substantive rights of the parties nor does it deprive any party of its day in court. Thus, we hold that 12 U.S.C. § 1821(f)(4) applies retroactively to govern this case and that this Court has jurisdiction in this appeal.
Id. at 701.
This principle — new procedural rules should be applied to pending cases — has been recognized and applied in pre- and posb-Landgraf cases and in multiple contexts. See NCNB Texas Nat’l Bank, 962 F.2d at 519 (Intervening statute changing the time allowed to the FDIC to remove a case applies to pending case.); Turboff, 867 F.2d at 1521 (New rule in Federal Arbitration Act that barred appeal of interlocutory orders directing arbitration to proceed and orders staying action pending arbitration applied to pending case.); Blaz v. Belfer, 368 F.3d 501, 505 (5th Cir.2004) (Securities Litigation Uniform Standards Act, which provides for removal and dismissal of certain state law securities class actions, applied to suit arising out of pre-enactment conduct.); Ojedo-Terrazas v. Ashcroft, 290 F.3d 292 (5th Cir.2002) (Statute and regulations revised between petitioner’s illegal reentry and the date of Notice to Intent to Reinstate his prior deportation order was issued. The revised statute and regulations expanded the class subject to reinstatement of removal, removed judicial review of the prior removal order and allowed an immigration officer, rather than an immigration judge to determine whether reinstatement was proper.)
This long-standing general rule that changes in procedure apply to pending cases is consistent with the treatment of rule changes under the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. Under Fed.R.Civ.P. 86(a)(2), new rules and amendments govern proceedings in pending actions unless the Supreme Court specifies otherwise in its promulgating order or the district court *912 determines that its application is not feasible or would work an injustice. Fed. R.Civ.P. 82(a)(2); Moore’s Federal Practice, § 86.03. The same treatment is given to amendments to the Federal Rules of Criminal Procedure. Orders from the Supreme Court to Congress transmitting amendments to the rules approved by the Supreme Court include language that the amendment shall take effect on a given effective date and “shall govern all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings in criminal cases then pending.” See Orders of the Supreme Court of the United States Adopting and Amending Rules, Federal Criminal Code and Rules, pp. 15-25 (West 2011 Edition).
Based on the above authority, the new BOP regulation dispensing with the administrative hearing is a procedural rule that applies to pending cases. In the words of the Landgrqf Court, “Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.” 511 U.S. at 275, 114 S.Ct. 1483. Thus if we were to grant Gutierrez the relief he requests, i.e. remand the case to the BOP, the BOP should apply the new regulation and properly decline to hold an administrative hearing. Because a remand would accomplish no purpose, we should affirm the district court’s order.[1]
The panel opinion implies that the change in the regulation has substantive effects that preclude its application to this case. However, this court in White addressing the regulations at issue in this case, stated, “The Sell Court was addressing an inmate’s substantive right to be free from unwanted medication — not the procedural protections of that right.” United States v. White, 431 F.3d 431, 435 (5th Cir.2005) (emphasis added).
The majority relies on general statements in the cases supporting the well known principal that some procedural changes impair a party’s substantive rights and do not apply to pending cases. But the majority opinion fails to cite a single case that refuses to apply a change comparable to the change in this case to pending cases. All the cases we have found that consider changes to the nature of the hearing, including changes in the decision maker, have been applied to pending cases.
Based on the above analysis, I would hold that the new BOP regulations in 28 C.F.R. § 549.43 would apply to Gutierrez on remand, rendering moot his request for a hearing under the prior version of the regulations.
B.
Even if we consider that the previous version or unamended version of the relevant regulation must apply to this case, based on this record, the remand to the Bureau of Prisons for another hearing is an exercise without a purpose.
In Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), while the unamended version of the regulations were in effect, the Supreme Court considered when it is constitutionally permissible for the government to forcibly medicate an inmate with anti-psychotic drugs to render the defendant competent to stand trial for serious but non-violent *913 crimes. The Court concluded that a United States district judge may order forced medication “only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial and taking account of less intrusive alternatives, is necessary significantly to further important government trial related interests.” The only issues laid out by the Supreme Court to which the neutral psychiatrist could make contributions are medical issues, i.e. whether the treatment is medically appropriate, is necessary to restore competency; is substantially unlikely to have side effects that may undermine the fairness of the trial; and whether less intrusive alternatives are available to restore competency-
The two government psychiatrists who gave opinions on these issues before the district court both concluded that the treatment was medically appropriate, that Gutierrez had been treated with the drugs that would be used in this case on previous occasions without serious side effects and was unlikely to have such side effects at this time. The psychiatrists were unaware of any less intrusive alternatives to restore competency. The psychiatrists also testified that Dr. Newman, who would have been the neutral psychiatrist in the event a hearing were held, agreed with these conclusions. Gutierrez offered no contrary evidence before the district court. On appeal, Gutierrez does not challenge the accuracy of these opinions. Given that Gutierrez has raised no question about the accuracy of the resolution of the issues within the neutral psychiatrist’s expertise, a remand for a hearing on the medical issues would accomplish nothing.
The defendant argues and the majority essentially holds that nevertheless a hearing for a hearing’s sake is necessary. In sum, Gutierrez does not quarrel with the medical testimony or the decision by the district court that forced medication was appropriate. Under these circumstances a remand to the BOP to consider an issue Gutierrez does not contest would be a useless exercise.

. The majority suggests that the administrative hearing could serve a purpose because if the neutral BOP psychiatrist found it inappropriate to forcibly medicate Gutierrez, that would end the right of the government to require medication for this purpose. No authority is cited for this proposition and Sell certainly does not condition the district court’s authority to order forced medication on a favorable ruling by the BOP.