CAROLINE CARSON *vs.* CORNELIUS T. DUNHAM.

Suffolk.    January 28, 1889. — March 5, 1889.

Present : MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Equity Jurisdiction — Injunction — Suit in another State.*

This court will not restrain the prosecution of a suit between citizens of this Commonwealth, pending in a court of another State which has jurisdiction of the subject matter and of the parties, on the ground that the decision of such court may differ from that of this court or from that of other courts of equal authority.

BILL IN EQUITY to enjoin the defendant, a citizen of this Commonwealth, from prosecuting a suit brought by him against the plaintiff, also a citizen of this Commonwealth, on August 11, 1886, in a court of South Carolina, to foreclose a mortgage of

land in that State. Hearing before *W. Allen*, J., who reported the case for the consideration of the full court. The material facts appear in the opinion.

*S. Bartlett & R. D. Weston-Smith*, for the plaintiff.

*J. F. Wiggin*, (*B. M. Fernald* with him,) for the defendant.

MORTON, C. J. This court has, without doubt, the power to restrain a citizen of this Commonwealth, who is personally within its jurisdiction, from prosecuting a suit in the courts of a sister State or a foreign country, when justice and equity require it.

In *Dehon* v. *Foster*, 4 Allen, 545, and 7 Allen, 57, the court, at the suit of the assignees of an insolvent debtor, enjoined a citizen of this Commonwealth from prosecuting a suit in Pennsylvania against the debtor, in which his property was attached, because the effect of allowing the suit to go to judgment would be to give the attaching creditor a preference over the other creditors, and to defeat the operation of the insolvent law. The doctrine of this case was reconsidered and reaffirmed in *Cunningham* v. *Butler*, 142 Mass. 47. Both of these cases proceed upon the ground, as stated by Mr. Justice Devens, that "the act of the defendants, in causing the property of the insolvent debtors to be attached in a foreign jurisdiction, tends directly to defeat the operation of the insolvent law in its most essential features, to prevent a portion of the property of the debtors from coming to the assignees to be equally distributed among their creditors, and to obtain a preference for themselves; that the defendants, being citizens of this State, were bound by its laws, and could not be permitted to do any acts to evade or counteract their operation, the effect of which would be to deprive other citizens of rights which those laws were intended to secure."

But the general rule is, that, where a case may be brought in either of two tribunals, that court which first obtains jurisdiction of the case retains it; and this extends, upon principles of comity, to cases of conflicting suits brought in the courts of sister States. This court, in the exercise of its judicial discretion, will not restrain the prosecution of such a suit unless a clear equity is made out, requiring the interposition of the court to prevent a manifest wrong and injustice, or a clear waiver of our laws which should govern the rights of the parties.

In the case at bar the defendant, Dunham, brought a suit in a court of competent jurisdiction in the State of South Carolina, to foreclose a mortgage upon a plantation called Dean Hall, situated in that State. The history of the mortgage is as follows. William A. Carson, who owned Dean Hall, died in 1856, leaving a widow, the plaintiff in this suit, and two children. He appointed Robinson and Blacklock his executors, with authority to sell the property, and to hold the proceeds in trust for his widow and children. In 1857 the executors sold Dean Hall to one Ball, and took his bonds for $35,000, secured by a mortgage of the plantation, most of which they held in trust for the widow and children. On May 7, 1863, Ball sold the property to Hyatt, McBurney, and Company, and Robinson, acting in the absence of his co-executor, received payment of the said bonds of Ball in Confederate treasury notes. On May 8, 1863, Hyatt, one of the partners, sold to his copartners his interest in the firm of Hyatt, McBurney, and Company, and took, as part of the consideration, a mortgage for $40,000 on Dean Hall. In July, 1886, the executrix of Hyatt assigned the said mortgage to Dunham, who, in August, 1886, brought the suit to foreclose it in the South Carolina court, as above stated. No personal service upon Mrs. Carson was made, but she appeared by counsel and defended the suit, " setting up as a defence all the facts alleged in the present bill."

If these were all the facts, it would seem to be clear that there was no ground for claiming that this court could properly interfere by injunction to restrain Dunham from prosecuting his suit. He had the right to bring his suit in the State court. A suit to foreclose the mortgage could only be brought in South Carolina. The land mortgaged is there, and most of the contracts which affect the rights of the parties were made there. The tribunals of that State, whose laws govern the title to the real estate and the interpretation of the contracts, are the appropriate tribunals to determine the rights of the parties.

But it further appears that, in 1866, Mrs. Carson, to whom her children had assigned all their interest, brought a bill in equity in the Circuit Court of the United States for the District of South Carolina against McBurney and others, but in which Hyatt was not made a party, in which the prayer was that the

bonds given by Ball might be declared valid and subsisting securities, and the mortgage to secure the same a subsisting lien on Dean Hall. The case went to the Supreme Court of the United States, and in that court a decree was rendered in favor of Mrs. Carson, as prayed for. *McBurney* v. *Carson,* 99 U. S. 567. In 1879 the executrix of Hyatt brought a suit to foreclose the mortgage to him in the State court of South Carolina. Mrs. Carson filed a petition to remove the case to the Circuit Court of the United States. This petition was overruled, and the Supreme Court of South Carolina, upon an appeal, sustained the jurisdiction of the State court, and rendered judgment for the plaintiff. *Hyatt* v. *McBurney,* 15 S. C. 393, 398, and 18 S. C. 199. Mrs. Carson took a writ of error to the Supreme Court of the United States, and also an appeal from a judgment of the Circuit Court refusing to remove the case. The Supreme Court decided that the Circuit Court had jurisdiction, and remanded the case for trial there; after which the case was dismissed upon motion of the plaintiff, and without any hearing upon the merits. See *Carson* v. *Hyatt,* 118 U. S. 279; and *Carson* v. *Dunham,* 121 U. S. 421.

The plaintiff in the suit before us contends that it thus appears that there is a difference of opinion between the Supreme Court of the United States and the Supreme Court of South Carolina upon the merits of the controversy between the parties; that the assignment to Dunham was colorable, and made for the purpose of enabling him to bring a suit in the State court which could not be removed to the United States court, and that these facts raise an equity in her favor which requires this court to enjoin Dunham from proceeding in his suit. It is the fair inference from the evidence in this case that Dunham desires to try his rights in the State court of South Carolina, because he supposes the decision will be favorable to him; and it is equally plain that Mrs. Carson is anxious to try her rights in the Supreme Court of the United States, or in this court, for the reason that she expects a decision in her favor. But it does not appear that the transfer to Dunham was merely colorable. The justice of this court who heard the case has found that Dunham " became the absolute owner of said bond and mortgage." This being so, it is immaterial what his motives were

for purchasing it. He had the right to enforce it in any competent tribunal. The Supreme Court of the United States has held that, even if the assignment to Dunham was colorable, it furnishes no ground for removing the case to the Circuit Court of the United States, and intimates that it is for the State court to decide whether this fact furnished any defence in the suit pending before it. *Carson* v. *Dunham*, 121 U. S. 421. *Provident Savings Society* v. *Ford*, 114 U. S. 635. *Oakley* v. *Goodnow*, 118 U. S. 43. But it is not necessary for us to consider what might be the effect of a merely colorable transfer, as it is found that the transfer to Dunham was valid, and not colorable.

We are then brought to the question, whether the fact, if it be a fact, that the Supreme Court of South Carolina entertains views of the law which governs the rights of the parties differing from those held by the Supreme Court of the United States justifies us in restraining Dunham from the further prosecution of his suit in the State court. The law gives the parties a choice of tribunals. Why is not Dunham's right to choose the South Carolina court as great as the right of Mrs. Carson to choose the United States court, or the courts of this Commonwealth? Reduced to its elements, the argument of the plaintiff is that we should interfere because there is danger that the Supreme Court of South Carolina will not rightly and justly decide the rights of the parties. We cannot yield to such an argument without a violation of every principle of inter-state comity. As we have said, the general rule of comity is that the court first acquiring jurisdiction shall retain it. In our judgment, it would be indefensible for the courts of this Commonwealth to restrain the prosecution of a suit pending in the court of a sister State, which has jurisdiction of the subject matter and of the parties, upon the ground that the decision of that court may differ from our own opinion, or from the decisions of other courts of equal authority. All the facts presented to us can be and are presented in the case pending in South Carolina, and it is presumed that the Supreme Court of that State will decide the case according to the law and the right.

For these reasons, without considering the merits of the controversy between the parties, we are of opinion that this bill cannot be maintained.                    *Bill dismissed.*