THE BANK OF PITTSBURGH, NATIONAL ASSOCIATION, a corporation created by and organized and existing under the laws of the United States of America,

*vs.*

THE UNITED ELECTRIC COAL COMPANIES, a corporation of the State of Delaware.

*New Castle, May* 23, 1928.

*Robert H. Richards* and *Aaron Finger*, for complainant.

*James I. Boyce*, for defendant.

THE CHANCELLOR. The demurrer sets out six grounds. Only one, however, was pressed at the argument. It is, that the case presented by the bill is not one that calls for equitable relief. In disposing of the demurrer the several theories upon which the complainant relies as entitling it to appeal to this court for relief will be noticed and passed upon in order.

First. The bill, it is argued, in one of its aspects is one to restrain the commission of waste. This argument is not tenable. The agreement upon which the complainant's case rests, and upon which the defendant's rights are founded, is one of letting

and it expressly authorizes the lessee to commit the acts which are said to constitute waste. Thus, in substance, we have an instance of the familiar relationship of a tenancy without impeachment for waste. The relationship has never been terminated, and the defendant continues to have the right to mine and remove coal by the consent of the complainant without being chargeable with waste.

Second. It is next contended that the bill should be retained on the theory that it seeks a reformation of the agreement.

"In the absence of satisfactory proof of fraud or mistake, there is no basis for a court of equity to reform an instrument." 23 R. C. L. 320.

This expresses the general rule on the subject. The bill fails to show anything in the nature of fraud or mistake, the usual equities upon which the remedy of reformation is based, either attending or preceding the execution of the lease. The document, so far as the bill shows expresses accurately and precisely what the parties intended. The rental specified by the lease was based on the assumption that the premises contained one thousand acres of merchantable coal. The parties, however, recognized that this assumption might be erroneous and they therefore agreed to an increase or reduction in the rental according as a survey should show the acreage of merchantable coal to be more or less than one thousand. They further covenanted in case of dispute, that each would be bound by the award of arbitrators selected as provided in the instrument. Thus a term of the contract was tentatively fixed, with an agreement, in effect, on the part of each party that either might, by resort to the method designated, take steps to render the tentative term certain and definite. The complainant argues that inasmuch as the parties became engaged in a dispute touching the matter of extent of acreage, and an award under the terms of the contract was made rendering certain the disputed item, it is proper for this court to retain the bill in order to reform the contract by writing the terms of the award into its provisions. This view cannot be accepted. If the arbitration proceedings and the consequent award were in strict obedience to the agreement, as is contended by the complainant, then the acreage as found by the arbitrators

and the rate of rental consequent thereon became by agreement of the parties a part of the contract itself. In one sense the arbitrators might be said to have thus "reformed" the instrument. But it would hardly be accurate to speak of the matter in that way. Rather, what took place was this—the arbitrators by agreement of the parties rendered certain that which the parties recognized as possibly uncertain. Assuming the acts of the arbitrators to have been legal and proper, as the complainant insists they were, the complainant now has a contract complete and definite in all of its terms, under which it is at liberty to proceed to assert its rights in the manner appealing to it as most appropriate. There is no occasion for equity to undertake a reformation of the instrument, by writing into the contract what the parties have already written through resort to the arbitration proceedings.

Third. Under this phase of the case the complainant contends that the bill should be retained as one to enjoin proceedings in the Circuit Court of Vermillion County, Illinois, in which the defendant seeks to nullify the result of the arbitration and to restrain the complainant from declaring a forfeiture. The complainant points to the clause in the agreement by which each party agrees not to institute suit at law or in equity touching any dispute or controversy which is made a subject of arbitration, and insists that the suit in Vermillion County was instituted by the defendant in breach of this clause. Let it be supposed that the Illinois suit is in breach of the defendant's agreement. How can that circumstance justify this court in interfering with the defendant's prosecution of it? If the defendant has no right, by reason of its agreement, to appeal to the Illinois court to enjoin a forfeiture and to avoid the award, the complainant can assert the fact in the Illinois litigation as well as here. If the complainant is entitled to affirmative relief here, the same consideration entitling it to such relief would entitle it to the defensive relief of dismissal there. In its last analysis this branch of the case rests on the proposition that this court would be warranted in interfering with the progress of the Illinois proceedings on the theory that the Illinois court has thus far in its proceedings committed error and will in its later stages continue to do so. That

is an assumption in which no court will indulge with respect to the proceedings of a sister State's tribunals, and an injunction in such cases will never be granted on such an assumption. *Carson v. Dunham*, 149 *Mass.* 52, 20 *N. E.* 312, 3 *L. R. A.* 203, 14 *Am. St. Rep.* 397. See also, *Chadwick v. Gill, et al., ante p.*127, 141 *A.* 618.

The demurrer will be sustained.