**ATLAS COPCO CONSTRUCTION TOOLS, INC., Plaintiff**

**v.**

**ALLIED CONSTRUCTION PRODUCTS LLC, Defendant**

**No. CIV.A. 03–30255–MAP.**

United States District Court, D. Massachusetts.

Feb. 19, 2004.

Kenneth J. DeMoura, Adler, Pollock & Sheehan, PC, Boston, for Allied Construction Products LLC, Defendant.

Fred A. Kelly, Jr., Nixon Peabody, LLP, Boston, for Atlas Copco Construction Tools, Inc., Plaintiff.

Kristin Dulong Kuperstein, Nixon Peabody, LLP, Boston, for Atlas Copco Construction Tools, Inc., Plaintiff.

*MEMORANDUM AND ORDER REGARDING RULINGS BY MAGISTRATE JUDGE KENNETH P. NEIMAN ON DEFENDANT'S MOTION TO STAY AND PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY* (Docket Nos. 2 & 10)

PONSOR, District Judge.

Plaintiff, Atlas Copco Construction Tools, Inc., ("Atlas") has brought this action against the defendant, Allied Construction Products LLC ("Allied"), seeking a declaratory judgment regarding a confidentiality agreement entered into by the parties. A parallel legal action has made substantial progress in the Cuyohoga County Court of Common Pleas in Cleveland, Ohio.

Based in large part on that litigation, Allied moved to stay the instant proceedings. Conversely, Atlas moved for expedited discovery. Both motions were referred to Magistrate Judge Kenneth P. Neiman for ruling, and on December 22, 2003 Magistrate Judge Neiman allowed Allied's Motion to Stay and denied Atlas's Motion for Expedited Discovery. Atlas filed an objection to the ruling regarding the stay.

Atlas contends, preliminarily, that the ruling is, in effect, dispositive and therefore subject to *de novo* review by this court. The Magistrate Judge treated the motion as non-dispositive, in which case he

would be subject to reversal only if "clearly erroneous or contrary to law." Fed. R.Civ.P. 72.

It is not necessary for the court to untangle this threshold dispute, since this court would affirm and adopt the Magistrate Judge's ruling under either standard. For the reasons set forth compellingly in Magistrate Judge Neiman's memorandum, a stay is appropriate in this instance, where the litigation in Ohio has moved quickly and where additional parties in the Ohio lawsuit insure that any remedy will be comprehensive. In sum, the Magistrate Judge's ruling is obviously neither clearly erroneous or contrary to law; moreover the court would (and, as necessary, hereby does) adopt the ruling upon *de novo* review.

It is worth adding that Atlas' contention that the Magistrate Judge addressed the Motion to Stay using the wrong standard is incorrect. Fairly construed, plaintiff's action seeks only a declaratory judgment. Thus, the standard set forth in *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), applies. Even if the court were to construe plaintiff's complaint liberally and find in the catchall claims for relief a request for damages, the "exceptional circumstances" standard would be satisfied here.

From whatever perspective, and based upon whatever standard, the Magistrate Judge's ruling was clearly correct. The plaintiff's objection is hereby overruled. The Motion to Stay (Docket No. 2) is ALLOWED and the Motion for Expedited Hearing (Docket No. 10) is DENIED.

It is So Ordered.

---

**1.** Allied's motion for a stay was set forth as an alternative to a motion to dismiss. After a colloquy in court regarding the procedural posture of the motion, Allied decided to withdraw its motion to dismiss without prejudice. (See Document No. 19).

---

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION TO STAY (Document No. 2) and PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY (Document No. 10)*

NEIMAN, United States Magistrate Judge.

The instant declaratory judgment action concerns a dispute between the plaintiff, Atlas Copco Construction Tool, Inc. ("Atlas"), and the defendant, Allied Construction Products LLC ("Allied"), regarding the interpretation of a Confidentiality Agreement entered into by the parties. A parallel action is proceeding in the Cuyohoga County Court of Common Pleas in Cleveland, Ohio, in which Allied, there the plaintiff, has alleged that Atlas violated the Confidentiality Agreement and that four former Allied employees not only breached non-disclosure agreements but violated the Ohio Trade Secrets Act as well. Presently, Allied has moved to stay the instant proceedings. Atlas opposes the motion and has moved for expedited discovery. Both motions have been referred to this court for hearing and determination. *See* 28 U.S.C. § 636(b)(1)(A).[1]

For the reasons which follow and after hearing excellent arguments by counsel on December 12, 2003, the court will allow Allied's motion for a stay and deny Atlas's motion for expedited discovery.

### I. BACKGROUND

The background is not materially in dispute, at least for purposes here. As set forth in Atlas's verified complaint, Allied, based in Cleveland, has manufactured and sold construction products for more than fifty years. Allied incorporates into one of

its key products components previously manufactured by Krupp Maschinentecknik GbmH ("Krupp").

At all times relevant hereto, Allied purchased, assembled and resold Krupp products pursuant to an April 20, 1993 distributorship agreement with Krupp (the "Distributorship Agreement"). In 2002, Altas Copco Construction Tools GmbH ("Atlas German")—of which Atlas is the United States affiliate—acquired the Distributorship Agreement which, in November of that year, it terminated. Termination of the Distributorship Agreement is set to take effect on December 31, 2003.

In the interim, in February of 2003, the parties began discussing Atlas's possible acquisition of Allied. To facilitate negotiations, the parties, on March 10, 2003, entered into a Confidentiality Agreement which prohibited the improper use of information obtained during the acquisition discussions. With specific reference to the parties' present dispute, paragraph 10 of the Confidentiality Agreement prohibited the direct or indirect solicitation of each other's employees:

> During the three year period beginning on the date of this Agreement, neither party will solicit for employment, either directly or indirectly, any person who was an employee of the other party on the date of this Agreement, unless such person was involuntarily terminated and is not under any contractual obligation of non-competition. . . .

The acquisition discussions eventually deteriorated, and Allied entered into à distribution agreement with Atlas's competitor, Sandvik Tamrock Corporation, due to become effective January 1, 2004.

On October 29, 2003, Allied filed the Ohio action against Atlas and four former employees who were allegedly solicited by Atlas as part of an attempt to steal Allied's business. Each of these employees, Allied claims, are bound by a confidentiality agreement which will inevitably be violated given the nature of the employees' past and future responsibilities.

Allied asserts that, in accord with Ohio's procedural rules, one of its lawyers telephoned Atlas's corporate counsel at approximately 10:30 a.m. on October 29, 2003, and indicated that Allied would be filing its complaint at approximately 1:30 p.m., together with an ex parte motion for a temporary restraining order seeking to enjoin Atlas from hiring Allied's employees. As it turns out, Atlas too had decided to commence the instant declaratory judgment action and filed its complaint at 12:07 p.m. that same day.

The Ohio action has proceeded apace. On November 14, 2003, the Ohio court granted a portion of the temporary relief requested by Allied and restrained Atlas from soliciting or hiring any of Allied's employees. However, on November 28, 2003, after the completion of some discovery, including depositions, the Ohio court—as the parties have since reported to this court—vacated the restraining order and denied Allied's request for a preliminary injunction. At the same time, the Ohio court denied Atlas's motion to stay those proceedings. The parties report that a status conference is scheduled in Ohio for today, December 22, 2003. Accordingly, the court has expedited this memorandum.

## II. Legal Standards

The Declaratory Judgment Act ("DJA"), under which Atlas initiated the present matter, gives the court the authority "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The DJA is designed to

enable parties "to clarify legal rights and obligations before acting upon them." *Ernst & Young v. Depositors Econ. Protection Corp.*, 45 F.3d 530, 534 (1st Cir. 1995) (citing *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649–50 (3d Cir. 1990) (in turn, citing legislative history)). The DJA "is mirrored by Fed.R.Civ.P. 57" and, as such, "[t]he statute and the rule are functionally equivalent." *Ernst & Young*, 45 F.3d at 534 n. 8 (citation omitted).

■ The DJA, however, "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir.1992) (citing, *inter alia*, *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). *See also DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997). Indeed, the Supreme Court has specifically held that the DJA "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green*, 474 U.S. at 72, 106 S.Ct. 423. For its part, the First Circuit has indicated that a court should exercise its discretion only after considering "the totality of the circumstances." *El Dia*, 963 F.2d at 494.

■ The court's decision to exercise jurisdiction in a declaratory judgment action may be informed by its factual nexus to a pending state matter. As the Supreme Court explained in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S.Ct. 1173. The question for a district court presented with such a situation, the Court explained, is to determine "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceedings pending in the state court." *Id.* In making such a determination, the Court continued, a court will need to examine "the scope of the pending state court proceeding and the nature of defenses open there," an inquiry which naturally entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* In fact, the Court noted, a court might be indulging in "[g]ratuitous interference" if it permitted a federal declaratory action to proceed when the parties have sufficient opportunity to resolve the issue in a pending state court action. *See id.*

Confirming the viability of *Brillhart*, the Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), rejected a claim that a district court should stay or dismiss a declaratory judgment only in "exceptional circumstances." *Id.* at 286, 115 S.Ct. 2137. The court held that "[d]istinct features of the [DJA] ... justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River [Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976),] and *Moses H. Cone [Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ]." *Wilton*, 515 U.S. at 286, 115 S.Ct. 2137.

To summarize the above standards, a court, in determining whether to exercise its broad discretion to stay an action pending the outcome of a parallel state matter,

should compare the nexus between the two suits, considering the totality of the circumstances. As will be discussed, the arguments proffered by the parties lead the court, in the end, to believe that the instant action should be stayed.

## III. DISCUSSION

■ As an initial matter, Atlas makes much of the fact that the instant action was filed before Allied filed its action in Ohio. In essence, Atlas claims that, in order for the deferential *Brillhart* and *Wilton* standards to apply, Allied must not only prove that the Ohio action raises the same issues as are presented here, but that Allied's claims in Ohio were pending *prior* to Atlas's present action in this court.

This court does not believe that the "pending" nature of the state court action necessarily turns on which matter was filed first, particularly where, as here, the Ohio action concerns, at least in part, other parties. In other words, the court does not believe that the analysis required by *Brillhart* and *Wilton* turns on a race to the courthouse. The fact that Atlas may have filed its action here against Allied just before Allied filed its lawsuit in Ohio—less than two hours before, to be exact—is by no means determinative. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir.1996) ("although the federal action was filed first, we decline to place undue significance on the race to the courthouse door"); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749–50 (7th Cir.1987) ("[T]he mere fact that [the plaintiff] filed its declaratory judgment ac-

tion first does not give it a 'right' to choose a forum."); *Aetna Cas. & Sur. Co. v. Alpha Mech., Inc.*, 9 F.Supp.2d 585, 588 (W.D.N.C.1998) (race to the courthouse given little weight).[2]

Bearing in mind the critical factors which must be considered, the court believes that the balance weighs in favor of staying the instant proceedings. *See generally Wilton*, 515 U.S. at 283–84, 115 S.Ct. 2137. First, the issue surrounding the interpretation of the Confidentiality Agreement is identical in both actions. There are no uniquely federal issues. To be sure, as Atlas points out, the Confidentiality Agreement, by its own terms, is to be construed in accordance with the laws of the Commonwealth of Massachusetts. But, Atlas's importuning to the contrary, this court does not believe that it is in a significantly better position than the Ohio court to interpret the parties' contract. Moreover, the court does not believe that the parties' dispute is of such import—an "issue of first impression," Atlas claims—as to necessitate that this action supersede the Ohio action.

Second, the Ohio court has already proceeded apace (and is to be commended for doing so). It makes little sense, therefore, to even suggest that the Ohio court apply its brakes or even for this court to proceed on a parallel track. Indeed, the Ohio court refused Atlas's request that it stay its proceedings.

Third, the Ohio action involves parties in addition to those present here, namely, four former employees of Allied against whom independent claims under Ohio state

---

2. The cases relied upon by Atlas are inapposite. Two involved the transfer of venue from one federal district court to another. *See Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977). Another, a case decided in 1889, stands for the proposition that a Massachu-

setts state court may enjoin an individual from prosecuting an action in a foreign jurisdiction if the purpose were to gain an unjust advantage or to evade the laws of the Commonwealth. *See Carson v. Dunham*, 149 Mass. 52, 20 N.E. 312, 313–14 (1889). No such claims are made here.

**234**

law have been asserted by Allied. Atlas's assertions to the contrary, there is no certainty that this court can exercise personal jurisdiction over these four individuals. Atlas's related argument regarding Allied's obligation to pursue "compulsory counterclaims" against these individuals, in the court's opinion, misses the mark.

Fourth, the Ohio action, as this court understands it, also involves a claim—asserted by Atlas against Allied as a counterclaim—for damages arising out of alleged bad faith litigation. No such claim is present here. As a result, the Ohio action provides a venue not only for the resolution of all disputes between Allied and Atlas, but for the other parties as well. Proceeding with the instant action, therefore, would result in confusion and piecemeal litigation. Concomitantly, staying the instant action would no doubt promote "judicial economy."

Given the totality of the circumstances, it is appropriate to stay this action and to deny Atlas's motion for expedited discovery. Of course, should the Ohio action not proceed in a timely manner, Atlas can always seek to lift the stay and ask that discovery commence. *See Wilton,* 515 U.S. at 288 n. 2, 115 S.Ct. 2137 (citation omitted).

### IV. CONCLUSION

For the reasons stated, Allied's motion for a stay is ALLOWED and Atlas's motion for expedited discovery is DENIED.

Dec. 22, 2003.