SUPERIOR COURT 
 
 MOSHE YANAI, RACHEL YANAI, AND MICHAL INTERNATIONAL INVESTMENT LLC v. ZACK KEINAN, INDIVIDUALLY AND AS GENERAL PARTNER OF SCINTILLA HOLDINGS, LTD.; SCINTILLA HOLDINGS, LTD., AS GENERAL PARTNER OF SCINTILLA FUND, L.P.;

 
 Docket:
 2584CV00565-BLS2
 
 
 Dates:
 April 28, 2025
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER DENYING PLAINTIFFS’ SECOND MOTION FOR A PRELIMINARY INJUNCTION
 
 

 Moshe and Rachel Yanai pledged their membership interests in Michal International Investment LLC (“MII”) as security for loans by Scintilla Fund, L.P. The outstanding balance is roughly $33 million. Moshe Yanai personally guaranteed repayment.
Plaintiffs brought this suit to challenge the Fund’s plan to sell the Yanais’s MII membership interests and the Fund’s exercise of the Yanais’ voting interests to install Boaz Toshav as the new Manager of MII. The Court previously entered an injunction temporarily barring any sale of the Yanais’ membership interests in MII, but denied Plaintiffs’ request to bar the Fund from acting on behalf of MII and to bar Toshav from acting as MII’s manager.
Plaintiffs have asked the Court to enter two additional forms of preliminary injunction relief. They seek an order barring Scintilla Holdings Ltd. and Zack Keinan from causing the Fund to seek an involuntary insolvency proceeding against Moshe Yanai in the Magistrate’s Court for Tel Aviv-Jaffa, Israel. They also seek an order barring Toshav from selling or otherwise disposing of MII’s interests in its portfolio companies without the Yanais’ consent or further Court order, and requiring that Toshav comply with his fiduciary duties as Manager.
The Court will deny both parts of Plaintiffs’ second motion for a preliminary injunction. It will not enjoin Scintilla and Keinan from seeking to collect on Yanai’s personal guarantee through an Israeli insolvency proceeding because the issues in this case differ from those in the Israeli matter, and because considerations of international comity way heavily against granting such relief. The Court will deny the second part of this motion because Plaintiffs have not
 
                                                            -1-
 
met their burden of proving they have any likelihood of success in prevailing on the current or proposed claims against Toshav.
1. Background. The following summary of the factual and procedural history of this case provides context for the latest preliminary injunction motion.
1.1. Factual Background. The underlying facts are recounted in more detailed in the Court’s prior preliminary injunction decision issued on March 20, 2025. A short summary of key underlying facts follows.
MII is in the business of investing in non-public operating companies, most of which are based in Israel. It is owned by Moshe Yanai and Rachel Yanai, both of whom are residents and citizens of Israel.
The Fund made a series of loans to MII. As noted above, the outstanding balance owed by MII and guaranteed by Yanai is roughly $33 million, and Moshe Yanai personally guaranteed repayment in full. The Facilities Agreements, under which the Fund made these loans and Moshe Yanai guaranteed repayment, provide that they are governed by Israeli law and that courts in Tel Aviv-Jaffa, Israel, shall have jurisdiction over related disputes.
The Facilities Agreements require that MII notify the Fund if it sells or disposes of any equity interest in a portfolio company, in which case the Fund was entitled to demand partial prepayment. In subsequent agreements, MII and Yanai made contractually-binding commitments that they would pay to the Fund the full proceeds received by MII from any subsequent sales of shares in eToro Group Ltd. MII and Yanai repeatedly breached this promise, selling more eToro shares without paying any of the proceeds to the Fund.
In 2023, Moshe and Rachel Yanai both pledged their ownership interests in MII as security for the amounts that MII continued to owe to the Fund.
In late 2024, MII committed a further undisclosed breach of contract by selling $9.84 million worth of eToro shares without telling the Fund and without paying the proceeds to the Fund.[1] MII also committed additional material breaches of its contractual obligations in early 2025.
 
--------------------------------------------
 
[1] Yanai continues to insist that it should not matter whether he diverted proceeds from selling eToro shares rather than using them to partially repay the Fund, so long as he used the money to support MII portfolio companies. He is wrong. In  exchange  for  the  Fund’s  continued  forbearance  after  MII  repeatedly
<continued…>
 
                                                            -2-
 
As a result, the Fund chose to exercise its right under the Pledge Agreements to take control of the Yanais’ voting and consensual rights as Members of MII, and used those voting rights to install Boaz Toshav as the new Manager of MII. The Fund also announced a plan to conduct a public sale of the Yanais’ membership interests in MII, as permitted under the Pledge Agreements.
1.2. Prior Rulings. Plaintiffs brought this suit to challenge Toshav’s appointment as Manager and the sale of the Yanais’ membership interests in MII that was planned for late March 2025. In a decision issued on March 20, the Court concluded that it may exercise personal jurisdiction over the Defendants, at least with respect to the claims that the Fund’s planned sale of the Yanais’ membership interests in MII is not commercially reasonable, would therefore violate the Uniform Commercial Code and the Yanais’ Pledge Agreements, and would constitute tortious interference by improper means with those Pledge Agreements. It also concluded that the forum selection clause in the Facilities Agreements did not bar Plaintiffs from bringing an action asserting those particular claims in Massachusetts.
The Court denied part of Plaintiffs’ first motion for a preliminary injunction, to the extent it sought to bar the Fund from acting on behalf of MII or to bar Toshav from acting as MII’s Manager. The Court did so because it found and concluded that Plaintiffs are almost certainly not going to succeed in proving that the Fund acted unlawfully in exercising the Yanais’ voting rights, removing Moshe Yanai as Manager of MII, and appointing Boaz Toshav as the new Manager.
In the same order, the Court allowed a different part of Plaintiffs’ first preliminary injunction motion by temporarily barring any sale of the Yanais’ membership interests in MII. The Court did so because it found and concluded that Plaintiffs were very likely to succeed in proving that the originally planned sale of those interests was not commercially reasonable and therefore would be unlawful, that Plaintiffs were likely to suffer irreparable harm if that sale went
 
--------------------------------------------
 
breached its loan obligations, Yanai made contractually binding promises to
pay to the Fund the full amount of any proceeds received by MII from selling eToro shares. He then deliberately breached those contracts and tried to conceal his actions. Yanai cannot escape the consequences of his misconduct by contending that it was all for the best, he used the proceeds “to maintain and enhance the value of MII’s Portfolio Companies,” and he did not divert that money “to any other business or personal purposes.”
 
                                                            -3-
 
forward as planned, and that the Fund would suffer no harm if the planned sale was temporarily barred.
In a separate decision issued eight days later, the Court denied without prejudice a motion by Mr. Toshav seeking a preliminary injunction that would have required Mr. Yanai immediately to provide certain documents, account for certain things, and take certain other actions. It did so for several reasons, including that Mr. Toshav has not asserted any counterclaims and therefore could not show that he is likely to succeed on any claims against Mr. Yanai.
2. Antisuit Injunction Barring Israeli Insolvency Proceedings. Let’s turn to the first part of Plaintiff’s latest motion for preliminary injunctive relief. It would be an unusual and extraordinary thing for a Massachusetts trial judge in effect to bar an Israeli court from commencing an involuntary insolvency proceeding against an Israeli citizen at the request of an Israeli lender. In the exercise of its discretion, the Court concludes that it would not be appropriate to enter such an order in this case.
2.1. Legal Background—Antisuit Injunctions. Massachusetts courts have “the power to restrain a citizen of this commonwealth, who is personally within its jurisdiction, from prosecuting a suit in the courts of a sister state or a foreign country, where justice and equity require it.” Carson v. Dunham, 149 Mass. 52, 53 (1889). It follows that they may also enter such an order against non-citizens over whom it may exercise personal jurisdiction. An order barring a party from prosecuting a suit in another jurisdiction is often described as an “antisuit injunctions.” See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 14 (1st Cir. 2004).
Courts generally hesitate before entering such an injunction. Since parties are generally “free to bring an action in any court having jurisdiction,” an antisuit injunction should not be entered unless “the plaintiff shows a sufficient equity to justify interference with the defendant's right of choice.” Bos. & M.R.R. v. Whitehead, 307 Mass. 106, 108 (1940); accord Carson, 149 Mass. at 56.
The principle that courts should usually respect a parties’ exercise of their right to seek relief in another forum applies with full force when a State or Federal court in the United States is asked to bar a party from prosecuting a proceeding in courts of a foreign nation. Any exercise of “the power to enjoin those subject to [a court’s] personal jurisdiction from pursuing litigation before foreign tribunals … must be tempered … by the accepted proposition that parallel
 
                                                            -4-
 
proceedings on the same in personam claim generally should be allowed to proceed simultaneously.” Quaak, 361 F.3d at 16.[2]
In addition, a judge considering whether to issue an antisuit injunction against a proceeding in a foreign country must also “take account of considerations of international comity,” as such an injunction “effectively restricts the jurisdiction of a foreign sovereign's courts.” Id.; accord, e.g., United States v. All Assets Held at Credit Suisse (Guernsey) Ltd., 45 F.45h 426, 434 (D.C. Cir. 2022).
In other words, “because an ‘antisuit injunction operates to restrict the foreign court's ability to exercise its jurisdiction as effectively as if it were addressed to the foreign court itself,’ ” a court “should issue an international antisuit injunction only when the interest in avoiding vexatious litigation outweighs the international-comity concerns inherent in enjoining a party from pursuing claims in a foreign court.” 1st Source Bank v. Neto, 861 F.3d 607, 613 (7th Cir. 2017), quoting Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 630 (5th Cir. 1996); accord, e.g., Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 359-361 (8th Cir. 2007) (collecting and discussing cases).
A party seeking an antisuit injunction need not meet the traditional tests of proving a likelihood of success on the merits, irreparable harm if the preliminary injunction is denied, that the balance of harms weighs in favor of granting injunctive relief, or that the requested relief would be in the public interest. Quaak, 361 F.3d at 19 (“the traditional four-part test for preliminary injunctions” does not apply “in cases involving international antisuit injunctions”); accord Stonington Partners, Inc. v. Lernout & Hauspie Speech Products N.V., 310 F.3d 118, 129 (3d Cir. 2002); Ganpat v. Eastern Pacific Shipping PTE, Ltd., 66 F.4th 578, 584–585 (5th Cir. 2023); Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 883–884 (9th Cir. 2012). “Instead, a movant ‘need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction.’ ” 1st Source Bank, supra, quoting E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 991 (9th Cir. 2006).
“The gatekeeping inquiry” when deciding whether to issue such a foreign antisuit injunction is “whether parallel suits involve the same parties and issues. Unless that condition is met, a court ordinarily should go no further and refuse the issuance of an international antisuit injunction.”  Quaak, 361 F.3d   at 18. “If—and only if—this threshold condition is satisfied should the court
 
--------------------------------------------
 
[2]        The Court finds the First Circuit’s careful analysis in Quaak to be persuasive, even though it does not bind Massachusetts courts.
 
                                                            -5-
 
proceed to consider all the facts and circumstances in order to decide whether an injunction is proper.” Id.; accord Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 716 F.3d 586, 595 (Fed. Cir. 2013) (Dyk, J., concurring).
If a judge is persuaded that this threshold requirement has been satisfied, and proceeds to analyze other relevant factors, “considerations of international comity must be given substantial weight—and those considerations ordinarily establish a rebuttable presumption against the issuance of an order that has the effect of halting foreign judicial proceedings.” Quaak, 361 F.3d at 18.
Other relevant circumstances “include (but are by no means limited to) such things as: the nature of the two actions (i.e., whether they are merely parallel or whether the foreign action is more properly classified as interdictory); the posture of the proceedings in the two countries; the conduct of the parties (including their good faith or lack thereof); the importance of the policies at stake in the litigation; and, finally, the extent to which the foreign action has the potential to undermine the forum court's ability to reach a just and speedy result.” Id. at 19.
2.2. Analysis. “Trial judges have broad discretion to grant or deny injunctive relief.” Lightlab Imaging, Inc. v. Axsun Technologies, Inc., 469 Mass. 181, 194 (2014). “A preliminary injunction is an extraordinary remedy never awarded as of right.” Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Instead, “the significant remedy of a preliminary injunction should not be granted” unless the plaintiff makes a “clear showing of entitlement thereto.” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004).
In the exercise of its broad discretion, the Court concludes that it would not be appropriate to bar Scintilla and Mr. Keinan from causing the Fund to seek an involuntary insolvency proceeding against Moshe Yanai in Israel.
2.2.1. Different Issues. Plaintiffs have not met their threshold burden of showing that this civil action and the newly-filed involuntary insolvency proceeding in Israel involve the same sets of issues. Plaintiffs did not address this critical issue in their memorandum filed in support of their second preliminary injunction motion, even though they cite to and rely upon Quaak. Nor did they address in their reply memorandum after Scintilla and Keinan had flagged the issue.
Since that prerequisite has not been met, Plaintiffs have not shown that they are entitled to an international antisuit injunction. See Quaak, 361 F.3d at 18.
 
                                                            -6-
 
To date, this case has concerned whether the efforts that the Fund had made to conduct a public sale of the Yanais’ membership interests in MII on March 27, 2025, were commercially reasonable, and whether the Fund acted lawfully in replacing Moshe Yanai as Manager of MII. During the recent hearing on this motion, Scintilla represented that it will be asking the Court to review and sign off on new plans to conduct a very different kind of sale of the MII membership interests, and Plaintiffs suggested that they were planning to seek leave to add claims asserting that Mr. Toshav is running MII in a manner that breaches his fiduciary duties to the Yanais.
In contrast, as the Court understands it, if the Magistrate Court in Israel were persuaded to commence an involuntary insolvency proceeding against Mr. Yanai, that case would have nothing to do the new defunct planned sale that was to take place on March 27, with the appointment of Mr. Toshav as Manager for MII, or with Mr. Toshav’s conduct or actions on behalf of MII. Instead, the proceeding would address whether Mr. Yanai is insolvent (which is not at issue here) and, if so, the scope of his indebtedness to all of his creditors (also not at issue here) and how to manage Mr. Yanai’s real estate, bank accounts, and all of his other assets (which are not at issue here, except for Yanai’s ownership interest in MII) in order to fairly protect the interests of his creditors (which may include entities other than the Fund). The only overlap of issues is that Mr. Yanai’s membership interest in MII is an asset that could be at issue in any Israeli insolvency proceeding.
Moshe Yanais’ assertion that the opening of Israeli insolvency proceedings against him could interfere with his ability to refinance MII’s debt and redeem the Yanais’ membership interests in MII misses the point. The issues in the insolvency proceeding, if it goes forward, will still in large part differ from the issues raised in this case. Furthermore, any right of redemption that the Yanais may have under their Pledge Agreements and G.L. c. 106, § 9-623 do not trump the Fund’s contractual right to enforce Moshe Yanai’s personal guarantee of MII’s debts. There is nothing unfair about the Fund exercising its clear contractual rights. See generally Pierce v. Christmas Tree Shops, Inc., 429 Mass. 91, 94 n.5 (1999) (insurer was not unjustly enriched by recouping portion of settlement paid to insured in manner provided by contractual subrogation clause); Federal Dep. Ins. Corp. v. LeBlanc, 85 F.3d 815, 822 (1st Cir. 1996) (lender does not breach implied covenant of good faith and fair dealing by engaging in “hard-nosed dealings” to secure or recoup monies owed by debtor); see also Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 289 (2007) (covenant “cannot
 
                                                            -7-
 
create rights and duties that are not already present in the contractual relationship”).
In sum, since there is very little overlap between the issues in this case and the issues in any Israeli insolvency proceeding, that is reason enough to deny Plaintiffs’ request for an antisuit injunction. See Quaak, 361 F.3d at 18.
2.2.2. International Comity. In any case, the Court is persuaded that considerations of international comity would weigh heavily against barring Keinan and Scintilla from pressing the Israeli insolvency proceeding even if there were a substantial overlap of issues between the two cases, and that Plaintiffs have not overcome the resulting presumption against issuing an order that would have the effect of halting the newly-filed proceeding in Israel. See Quaak, 361 F.3d at 18; see also Carson, 149 Mass. at 56 (denying antisuit injunction on ground of interstate comity). “Comity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases.” Gau Shan Co. v. Bankers Tr. Co., 956 F.2d 1349, 1354 (6th Cir. 1992). The circumstances of this case do not justify enjoining the involuntary insolvency proceeding that the Fund seeks to begin in Israel.
Moshe Yanai is a citizen and resident of Israel. He is asking this Court in effect to prevent an Israeli tribunal from considering and perhaps adjudicating an involuntary insolvency proceeding that arise from Mr. Yanai’s personal guarantee of debts made by an Israeli lender to a company that used the proceeds mainly to invest in Israeli businesses, under loan documents providing that they are governed by Israeli law and that courts in Israel shall have jurisdiction to determine resulting claims.
Having agreed that his personal guarantee of MII’s debts to the Fund are governed by Israeli law and that disputes over enforcement or collection of those debts should be resolved in Israeli courts, Mr. Yanai is hardly in a position to contend that it would be inequitable to permit the Fund to press for an involuntary insolvency proceeding in Israel merely because Mr. Yanai asserts different claims here in Massachusetts. See, e.g., LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 200 (2d Cir. 2004) (principles of comity justified denial of antisuit injunction aimed at preventing Mexican court from adjudicating dispute concerning Mexican corporation governed by Mexican law).
Mr. Yanai’s insistence that the Israeli insolvency proceeding should be stopped because only a Massachusetts court may decide whether the Massachusetts usury statute limits the interest that the Fund can charge MII is not persuasive.
 
                                                            -8-
 
“[I]t would be indefensible” to restrain the involuntary insolvency proceeding in Israel on the ground that an Israeli court could not decide that issue in accord with the law, or that it might make a different decision than a Massachusetts court would make. Carson, 149 Mass. at 56 (dismissing petition for antisuit injunction on grounds of interstate comity). Courts in other jurisdictions are fully capable of fairly applying choice-of-law principles, giving “effect to Massachusetts fundamental public policy,” and applying Massachusetts law where appropriate. Melia v. Zenhire, Inc., 462 Mass. 164, 182 (2012) (enforcing forum selection clause over objection that New York courts could not be trusted to adjudicate Massachusetts Wage Act claim). “International comity requires” that the Court respect the ability of Israeli courts fairly and competently to resolve any issues that may be raised in an involuntary insolvency proceeding against Mr. Yanai.  See Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics,  433 Mass. 122, 133 (2000) (enforcing forum selection clause).
3. Injunction Constraining Mr. Toshav’s Powers as MII Manager. Let’s now turn to the second part of the latest motion for preliminary injunctive relief. Plaintiffs are not entitled to their latest proposed injunction against Mr. Toshav because they have not met their burden of proving that they are likely to succeed in proving any existing claim, or even any identified future claim, against Toshav.
A party seeking preliminary injunctive relief must show they have “a likelihood of success on the merits of the underlying claim.” Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 860 (2004). Without such a showing, “the remaining factors become matters of idle curiosity.” Lieber v. President and Fellows of Harvard College, 488 Mass. 816, 822 (2022), quoting Foster v. Commissioner of Correction, 484 Mass. 698, 712 (2020), quoting in turn Maine Educ. Ass’n Benefits Trust v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012).
The Yanais assert that they should be granted the relief they seek against Toshav because they “have no confidence that Toshav will comply with his fiduciary obligation to keep them fully advised of any intentions, plans and communications with third parties and Scintilla with respect to the sale of MII’s interest in the Portfolio Companies” and as a result “will undoubtedly prevail on claims against Toshav for breach of fiduciary duty.”
But the Yanais have not asserted any claim for breach of fiduciary duty against Toshav. They cannot demonstrate any likelihood of success on the merits as to a claim that they have not asserted. “[A]ny motion or suit for either a
 
                                                            -9-
 
preliminary or permanent injunction must be based upon a cause of action…. ‘There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny’ ” if challenged on a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1118, 1127 (11th Cir. 2005), quoting Klay v. United Healthgroup, Inc. 376 F.3d 1092, 1097 (11th Cir. 2004).
The filing of a meritorious claim or counterclaim is therefore a condition precedent to seeking injunctive relief. See, e.g., Litton Industries, Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1979) (injunction “must be based on a valid cause of action alleged in the complaint”); Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. 2011) (en banc) (“an injunction is a remedy and not a cause of action; therefore, it must be based on some recognized and pleaded legal theory”); see also Mullins v. Corcoran, 488 Mass. 275, 286 n.16 (2021) (“Injunctive relief is a remedy, and not a cause of action.”); In re Transunion Derivative Stockholder Litigation, 324 A.2d 869, 882 (Del. Ch. 2024) (same).
In any case, even if the Yanais had amended their complaint to add a claim against Toshav for breach of fiduciary duty, they present no evidence showing that they have any likelihood of succeeding on such a claim.
The Court has previously observed that Toshav, as the Manager of a Massachusetts limited liability company, now owes fiduciary duties to MII and to its Members (the Yanais). See, e.g., Pointer v. Castellani, 455 Mass. 537, 549– 551 (2009) (member-managers of LLC owe fiduciary duty to other members); Genesis Technical & Financial, Inc. v. Cast Navigation, LLC, 74 Mass. App. Ct. 203, 203–204 & 211–212 (2009) (officer and director of LLC owes fiduciary duty to the company).[3]
 
--------------------------------------------
 
[3] Toshav’s troubling assertion that the MII Operating Agreement “absolves him of fiduciary duties of loyalty and care” is incorrect. Section 6.07(a) of the Operating Agreement provides that MII’s Members owe no fiduciary duty to each other. Such a disclaimer of fiduciary duties in an LLC operating agreement is enforceable. See G.L. c. 156C, § 63(b). In contrast, § 6.07(b), which addresses the potential liability of a Manager to MII or its Members, does not say that the Manager owes no fiduciary duties. Where a contract includes certain language in one provision but not in others, that language may not be read  into  provisions  where  it  does  not  appear.  See  Wildlands  Trust  of
<continued…>
 
                                                            -10-
 
Officers, directors, and managers of a closely held corporation of limited liability company “are charged with the fiduciary duty of the ‘utmost good faith and loyalty.’ ” Charlette v. Charlette Bros. Foundry, 59 Mass. App. Ct. 34, 43 (2003), quoting Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 593 (1975). The Yanais have presented no evidence that Toshav has failed to act in accord with his duties of good faith and loyalty, or that he is likely to do so.
Toshav’s duties of good faith and loyalty do not require that he tell the Yanais everything that he is doing on behalf of MII, or to seek their approval or court approval before selling any of MII’s assets.
Cases cited by Plaintiffs that discuss a fiduciary duty of “full disclosure” are actually addressing the rule that a claim for breach of fiduciary duty does not accrue, and therefore the statutory limitations period on the claim does not begin to run, until after the fiduciary has disclosed that facts that would give rise to knowledge of a cause of action. See Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997); Passatempo v. McMenimen, 461 Mass. 279, 294–295 (2012); accord Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 175–176 (1992). In other words, they apply the principle that a fiduciary has an affirmative duty to disclose adequate information to alert the person to whom
 
--------------------------------------------
 
Southeastern Massachusetts, Inc. v. Cedar Hill Retreat Center, Inc., 98 Mass.  App.
Ct. 775, 783 (2020).
Section 6.07(b) provides that the Manager will not be liable to MII or its owners so long as they have acted “in good faith,” reasonable determined that their actions were “in the best interests of the Company,” and did not do anything that constitutes “gross negligence or willful misconduct.” This is the language that Toshav relies upon.
That provision merely codifies the common law business judgment rule, which “protects directors and officers from liability for conduct that they have taken in good faith, with the care that a person in a like position would reasonably believe appropriate in similar circumstances, and in a manner the director or officer reasonably believes to be in the best interests of the corporation.” Halebian v. Berv, 457 Mass. 620, 627 n.11 (2010). Where this rule applies, a corporate decision maker cannot be held “responsible for mere errors of judgment or want of prudence short of ‘clear and gross negligence.’ ” Uccello
v. Gold'n Foods, Inc., 325 Mass. 319, 321 (1950), quoting Spiegel v. Beacon Participations, Inc. 297 Mass. 398, 410–412 (1937). At common law, a reasonable exercise of business judgment cannot constitute a breach of fiduciary duty by an officer, director, or manager of a corporation or an LLC. See Black v. Parker Mfg. Co., 329 Mass. 105, 112–113 (1952).
 
                                                            -11-
 
the duty is owed of any wrongdoing by the fiduciary. See Patsos v. First Albany Corp., 433 Mass. 323, 329 (2001).
These decisions do not hold that an officer or manager of a closely-held company must disclose everything they are doing on behalf of the business entity to the owners or face liability for breach of fiduciary duty.
ORDER
Plaintiffs’ second motion for injunctive relief (docket no. 43) is denied.